(No. 65948.— )

*In re* J. ANTHONY MASON, Attorney, Respondent.

*Opinion filed April 25, 1988.*

Susan D. Shivers, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Donald Hubert and Philip J. Fowler, of Donald Hubert & Associates, of Chicago, for respondent.

JUSTICE CUNNINGHAM delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission (Commission) filed a two-count complaint against respondent, J. Anthony Mason. The principal conduct giving rise to the allegations of count I was respondent's failure to file a notice of claim pursuant to section 41 of the Metropolitan Transit Authority Act (Ill. Rev. Stat. 1983, ch. 111⅔, par. 341) with the Chicago Transit Authority (CTA), against whom his client wished to initiate a personal injury action. In count I, the Administrator alleged that respondent neglected a legal matter entrusted to him in violation of Rule 6—101(a)(3) of the Code of Professional Responsibility (Code) (107 Ill. 2d R. 6—101(a)(3)); failed to seek the law-

ful objectives of his client through reasonably available means in violation of Rule 7—101(a)(1) of the Code (107 Ill. 2d R. 7—101(a)(1)); failed to carry out a contract of employment entered into with a client for professional services in violation of Rule 7—101(a)(2) of the Code (107 Ill. 2d R. 7—101(a)(2)); and engaged in conduct which prejudiced or damaged his client during the course of the professional relationship in violation of Rule 7—101(a)(3) of the Code (107 Ill. 2d R. 7—101(a)(3)).

In count II, which was based upon respondent's alleged attempt to conceal the error alleged in count I, the Administrator asserted that respondent attempted to limit liability to a client for personal malpractice in violation of Rule 6—102(a) of the Code (107 Ill. 2d R. 6—102(a)). In both counts the Administrator alleged that respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Rule 1—102(a)(4) of the Code (107 Ill. 2d R. 1—102(a)(4)); engaged in conduct that was prejudicial to the administration of justice in violation of Rule 1—102(a)(5) of the Code (107 Ill. 2d R. 1—102(a)(5)); engaged in conduct which had the appearance of professional impropriety in violation of canon 9 of the Code (107 Ill. 2d Canon 9); and engaged in conduct which tended to defeat the administration of justice or bring the courts or legal profession into disrepute in violation of Supreme Court Rule 771 (107 Ill. 2d R. 771).

After hearing evidence on the complaint, the hearing panel recommended that this court censure but not suspend respondent. Both respondent and the Administrator filed exceptions to the hearing panel's findings and recommendation, but the Review Board (over the dissent of two members) concurred in the findings, conclusions and recommendations of the hearing panel.

Respondent testified before the hearing panel regarding his personal and professional background and re-

garding the facts pertinent to this case. With regard to his own background, he testified that he obtained his Illinois license to practice law in November 1978, after which he worked as an attorney for a pharmaceutical company for whom he had worked for many years in other capacities. In 1983, approximately one year prior to the misconduct alleged herein, respondent began to work as a sole practitioner. He is presently married and the father of two children. No other disciplinary complaints have been filed against him.

With respect to count I, respondent's testimony, in conjunction with certain evidentiary exhibits, indicated that on April 26, 1984, John Battle requested that respondent assert on his behalf a personal injury claim against the CTA and a CTA bus driver. Battle informed respondent that his foot had been injured and that his arm and neck had been severely bruised in a CTA bus accident on March 2, 1984. Battle further claimed that the driver closed the door on his arm and leg and pulled off from the curb, dragging Battle along a city street. Battle told respondent that he had gone to the emergency room twice and had been hospitalized for many days at Cook County and Loretta Hospitals, that he had medical bills exceeding $9,000, and that both a police report and an emergency-room report had been prepared at the time of the accident.

Respondent further testified that on the same day that he interviewed Battle he also filled out and personally delivered to the Chicago police department an accident request form. The following day he sent Battle a post-interview "follow-up" letter. Shortly thereafter, respondent mailed a notice of attorney's lien to the CTA. He believes that he included with the lien notice a copy of the police report, which stated that Battle was treated at Cook County Hospital. Respondent also mailed out requests for emergency-room reports, medical reports and

itemized statements of medical costs. Respondent received responses to these requests.

Respondent testified that he reviewed the reports and documents and found that none of the reports from Cook County Hospital related to a bus accident, and respondent also found nothing relating to an emergency-room visit. Rather, the medical reports related to treatments for diabetes and acute alcoholism. Respondent's inspection of the police report revealed that it was filed four days after the alleged accident and was based solely upon what Battle had verbally informed the police. Respondent testified that at that point he began to suspect that his client was being less than candid with him, but that despite these doubts respondent again attempted to obtain records of the supposed accident-related emergency-room visits, through written and telephone requests. Respondent stated that eventually the hospital confirmed orally and in writing that no such emergency-room report existed.

According to respondent, he had several written and oral communications with a CTA claims representative within six months of the alleged accident. The claims representative did not mention that the CTA required an official notice of claim within six months of the accident date. Rather, the CTA representative wrote to respondent advising him that the CTA's file was "incomplete as to a medical release form, certain medical reports and certain bills."

Respondent testified that in early 1985 another attorney advised him of the six-month notice requirement. Respondent did not previously know of this requirement, though he had been familiar with the applicable limitations period for actually filing suit.

Portions of Battle's recorded testimony with respect to count I contradict respondent's testimony. However, much of that testimony of Battle is contradicted by Bat-

tle himself elsewhere in the record. For example, at one point Battle testified that respondent told him that suit had been filed; later Battle indicated that he had only been told that the matter was settled. With respect to other communications between respondent and Battle, each individual's pertinent testimony is largely consistent with the other.

With respect to count II, respondent acknowledged that upon discovering his error he concocted a somewhat extensive scheme to conceal the error from his client. He advised Battle that Battle could likely obtain only several hundred dollars in settlement. Battle told him that such an amount was insufficient, and that respondent should make a settlement demand of $700. Without further communicating with the CTA, respondent told Battle that the CTA had agreed to settle the claim for $700. Respondent then wrote Battle a check (drawn on respondent's trust fund account) in the amount of $700, less expenses and fees. Additionally, respondent drafted and had Battle sign a fabricated "statement of settlement."

Respondent also testified regarding the manner in which he handled the situation after the Commission was contacted, and respondent's testimony in this regard is clearly supported by the documentary evidence. Respondent fully admitted his misconduct at the beginning of the investigation, making complete disclosure both to the Commission and his client. Respondent advised his client to have an attorney review the file documents (copies of which respondent sent to the client) and determine whether a malpractice claim should be initiated. Respondent also suggested sources for obtaining legal assistance. Respondent further told his client that if the client was unable to afford legal assistance, respondent would pay for counsel of the client's choice to review the file.

We turn first to count I, the fundamental contention of which is that, by failing to file a statutory notice with

the CTA, respondent exhibited negligence warranting discipline. Based upon the entirety of the facts and circumstances established by the record, we reject this contention and find, as did the hearing panel and Review Board, that count I should be dismissed.

In determining whether the failure to file the statutory notice constitutes neglect or incompetence warranting discipline, it is important to note that we are *not* determining whether the conduct was negligence sufficient to provide one of the elements of a malpractice suit. The ultimate determination which a court or jury in a malpractice action makes is whether the cost of an attorney's error (if that error has been proven) is to be borne by the attorney or the client who relied upon him. The objective of a disciplinary proceeding is, however, entirely different. Its purpose is to protect the public, to maintain the integrity of the profession, and to protect the administration of justice from reproach. (*In re Lacob* (1972), 50 Ill. 2d 277; *In re Heirich* (1956), 10 Ill. 2d 357.) For this reason, we need not determine whether respondent's failure to file the notice could be a basis for holding him liable for any proximately resulting damages, and we likewise need not determine whether (in view of the notice which the CTA did receive) the failure to strictly comply with the statutory provision would have barred the suit.

There can be no doubt that the most prudent course of conduct would have been to strictly comply with the statutory notice provision, in order to avoid any risk of forfeiting the client's claim. However, regardless of whether respondent's failure in this respect was "negligence" in the malpractice sense, this oversight, standing alone, simply cannot be deemed neglect or incompetence within the meaning of the pertinent rules of the Code.

We recognize that attorneys have been disciplined in the past in part for failing to file a claim within the ap-

plicable limitations period. (See, *e.g.*, *In re Levin* (1979), 77 Ill. 2d 205; *In re* Milwid (1978), Docket No. 49718 (unpublished order).) However, these cases have typically involved situations in which the attorney had set the case aside in favor of other matters. By contrast, respondent herein was generally actively pursuing the case at all relevant times and was frequently in touch with his client. Moreover, he was well aware of the limitations period, which generally any competent attorney would either be familiar with or would routinely check upon accepting a case. What this young, relatively inexperienced sole practitioner did not recognize was the much less widely known "notice" requirement of the Metropolitan Transit Authority Act.

While fairness requires a reasonable degree of consistency and predictability in attorney discipline, each matter is unique and must be decided upon its own facts. (*In re Yamaguchi* (1987), 118 Ill. 2d 417.) Given the facts of this case, we conclude that respondent's isolated oversight, although certainly not to be condoned, is simply not sufficiently culpable to warrant discipline.

In stark contrast to respondent's unintentional failure stands his reprehensible scheme to conceal his error, a scheme which he fully acknowledges. In view of respondent's admissions, we find that the Administrator has established the factual allegations of count II. We also find that the proven conduct violates certain of the Code provisions upon which the Administrator relies. Clearly, the conduct involved in attempting to limit his potential malpractice liability to his client violated Rule 6—102(a) (107 Ill. 2d R. 6—102(a)), involved fraud and dishonesty in violation of Rule 1—102(a)(4) (107 Ill. 2d R. 1—102(a)(4)) and violated canon 9 of the Code (107 Ill. 2d Canon 9), which directs attorneys to avoid the appearance of impropriety. The conduct also violated Supreme Court Rule 771 (107 Ill. 2d R. 771), in that it tended to defeat the administra-

tion of justice and bring the legal profession into disrepute. In view of the dubious nature of the client's claim, however, we cannot say that the Administrator has clearly established that respondent's misconduct prejudiced the client. Thus, a violation of Rule 7—101(a)(3) (107 Ill. 2d R. 7—101(a)(3)) has not been established.

Inarguably, respondent must be disciplined for his intentional misconduct, and the critical question is whether a suspension is required or whether the ends of justice will be served by a censure.

In seeking to assure that respondent's sanction is somewhat comparable to comparable misconduct which has occurred in other cases, we have examined numerous somewhat analogous cases, and we find particularly pertinent *In re Winn* (1984), 103 Ill. 2d 334, which in our view involved conduct no less grievous than respondent's misconduct. The respondent in *Winn* admitted representing to his client on numerous occasions that two actions filed on her behalf were pending, when in fact one action had been dismissed for want of prosecution and another had been dismissed because the limitations period had expired before the complaint was filed. The respondent in *Winn* also acknowledged that he had told another client that a personal injury action had been filed on that client's behalf, when in fact the action had not been filed and he knew that essential physical evidence had been mistakenly discarded.

This court found that the respondent in *Winn* was negligent and dilatory in representing his clients and had made numerous misrepresentations concerning the status of their litigation. Noting the candor of the respondent before the Hearing Board and several mitigating considerations, this court ordered that the respondent in *Winn* be censured.

We do note a significant difference in the nature of the misrepresentation in the instant case as compared

with the misrepresentation in *Winn.* The respondent in *Winn* made misrepresentations to postpone determining whether and how to disclose his errors to his clients. By contrast, respondent herein made misrepresentations in order to forever conceal his mistake and put the matter to rest. Whereas the respondent in *Winn*, even absent disciplinary intervention, might eventually have admitted his errors to his clients, respondent herein obviously had no intention of doing so—until the client filed a complaint with the Commission. However, we also note that respondent's misrepresentations were far less numerous than those in *Winn.* We further note that the misrepresentations herein involved a "claim" which respondent had strong reason to believe was the product of his alcoholic client's fabricated story and which arguably would not have provided a good-faith basis for filing a personal injury complaint. Although the seriously questionable merits of the claim do not excuse respondent's conduct, the reasonable potential value of the claim is certainly pertinent in evaluating the magnitude of the fraud.

We also note that, as in *Winn*, respondent's candor in acknowledging all of the pertinent facts to the Commission immediately upon the initiation of the disciplinary investigation was exemplary. By such candor before the Commission respondent cannot mitigate his previously wrongful conduct, but he can certainly set himself apart from attorneys who have been less than straightforward with the Commission and have therefore been more severely disciplined than would otherwise have been necessary.

We also find insightful *In re* Perretti (1982), Docket No. M.R. 2912 (unpublished order). The respondent, Perretti, was retained to commence a forcible entry and detainer action to secure either vacation of certain realty or payment of rent. Perretti falsely represented to his client that he had secured a judgment in his favor. The

Hearing Board, noting that at the hearing Perretti had been forthright and candid and was contrite and remorseful, recommended censure. The Review Board affirmed, and Perretti was censured by this court.

An examination of *In re* Perretti, in light of the principle that comparable misconduct warrants comparable discipline, supports a decision to censure rather than suspend respondent. As in Perretti's case, respondent misrepresented to his client that a favorable outcome (in this case, a settlement requested by the client) had been obtained, when in fact it had not. As in *In re* Perretti, respondent was forthright and candid with the investigating authorities. As in *In re* Perretti, respondent has made clear his remorse, sufficiently so that the Hearing Board concluded that respondent "will not again stray from the beaten path."

This particular similarity between the instant case and *In re* Perretti deserves further comment. The Administrator contends that a particular comment of respondent indicates a lack of remorse. The comment was as follows: "I haven't lost any sleep over this case from the standpoint that I didn't do anything to injure or knowingly hurt Mr. Battle." In our view, respondent was indicating his often-repeated position that he does not believe that his wrongful conduct resulted in the loss of funds to his client (due to the highly doubtful validity of the claim). This comment does not indicate a lack of remorse, but is rather a refutation of the Administrator's allegation that respondent's wrongful conduct caused the client actual loss.

We must also point out the way in which an attorney's attitude regarding his own prior conduct is significant. It is not truly a mitigating factor, occurring as it does after the misconduct itself. It is, however, of value when viewed in conjunction with one of the objectives of attorney discipline—to protect the public. An attorney's

failure to recognize the wrongfulness of his conduct often necessitates a greater degree of discipline than is otherwise necessary, in order that the attorney will come to appreciate the wrongfulness of his conduct and not again victimize members of the public with such misconduct. Having reviewed the record, we find little basis to dispute the hearing panel's decision that respondent "will not again stray from the beaten path."

Numerous cases cited by the Administrator are not analogous to the instant case. For example, the respondent in *In re Levinson* (1978), 71 Ill. 2d 486, was guilty of a lengthy course of conscious neglect, extending over a 16-month period (in an adoption proceeding), during which time the respondent repeatedly avoided working on the case and frequently refused to speak with either his client or the adoption agency involved therein. In conjunction with this culpable neglect, the respondent in *Levinson* made repeated misrepresentations (to both the adoption agency personnel and his clients) regarding his supposed efforts in the case. Moreover, the respondent in *Levinson* displayed a total lack of concern regarding the disciplinary proceedings against him. He filed no answer to the disciplinary complaint and neither he nor anyone on his behalf appeared before the Hearing Board or Review Board. Only after this court entered an order approving the report of the Review Board and disbarring respondent did he appear in this court, on a motion to reconsider and for leave to file exceptions to the Review Board's report. In the instant case respondent's conduct is simply not of the same gravity as was the respondent's conduct in *Levinson*.

We also find *In re Milwid* (1978), Docket No. 49718 (unpublished order), cited by the Administrator, inapposite for numerous reasons. The respondent in *In re Milwid* fabricated "settlements" in three separate cases for the same client, cases which the hearing panel found

respondent had totally neglected except for sending two letters to the insurance carrier for one of the defendants. One of these cases involved his client's claim for serious, permanent personal injuries. Moreover, respondent Milwid lied to the Commission regarding the alleged disposition of the claims. By contrast, the instant case involves misrepresentation of a single claim, does not involve wilful neglect, and does not involve a respondent who lied to the Commission.

Also inapposite is *In re* Slater (1979), Docket No. 50686 (unpublished order), upon which the Administrator relies in part, and in which the respondent was suspended. In *In re* Slater, the respondent filed suit to recover for goods and services provided by his client and expenses incurred by his client. He then neglected the action. Then, mistakenly believing that the action had been dismissed for want of prosecution, he fabricated a settlement, used fraudulent court documents to bolster the deception, and issued his client a check for which he knew his account lacked sufficient funds. Moreover, in *In re* Slater the hearing panel found that the respondent had not testified with complete candor. Because the respondent's conduct in *In re* Slater involved culpable neglect as well as deception, and further involved a lack of candor before the hearing panel, *In re* Slater is simply not analogous to the instant case.

Considering the nature and gravity of the proven misconduct, the mitigating considerations which we have discussed, respondent's candor in addressing the disciplinary investigation, and discipline imposed in somewhat analogous cases, we find that a censure will adequately fulfill the objectives of attorney discipline.

*Respondent censured.*