(No. 65432.

*In re* FRED LANE, Attorney, Respondent.

*Opinion filed February 22, 1989.—Rehearing denied April 3, 1989.*

STAMOS and CALVO, JJ., took no part.
MORAN, C.J., dissenting.

William C. Cunningham, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for respondent.

Malcolm C. Rich, of Chicago, for *amicus curiae* Chi-

cago Council of Lawyers.

PER CURIAM: On June 10, 1986, the Administrator of the Attorney Registration and Disciplinary Commission filed a one-count complaint charging the respondent, Fred Lane, with professional misconduct in connection with a loan involving former Judge Reginald Holzer. Following a hearing, a panel of the Hearing Board filed a report recommending that the complaint be dismissed. The Administrator then filed exceptions with the Review Board. Seven members of the Review Board disagreed with the Hearing Board's report, concluding that respondent's conduct resulted in ethical violations. The Review Board recommended respondent's suspension from the practice of law for a period of one year. Two members of the Review Board did not participate. Respondent then filed exceptions with this court pursuant to Supreme Court Rule 753(e)(5) (107 Ill. 2d R. 753(e)(5)).

Respondent was licensed to practice law in Illinois in 1950, and is now approximately 63 years old. From 1965 through 1980, respondent was the sole proprietor of a Chicago law firm which concentrated in representing plaintiffs in personal injury cases. Since 1981, the firm has operated as a partnership with respondent as its senior partner. For over 20 years, respondent has also conducted a well-known trial technique course at the firm's offices where he teaches two evenings a week. Respondent has lectured on the same subject at various seminars across the country. Additionally, respondent has authored one treatise, co-authored another, and has acted as the editor of a quarterly periodical since 1968. Between 1975 and 1980, respondent worked primarily at home on his various publications and left the daily operations of the firm to his associates. Respondent has been active in numerous professional organizations, including the Illinois Trial Lawyers Association, the Illinois chapter of the

American Board of Trial Advocates, the Decalogue Society of Lawyers, and the Illinois State Bar Association, serving, at different times, as president of each of these associations.

Respondent and Reginald Holzer met in 1955 through their mutual involvement in the Decalogue Society. Because both Holzer and respondent were active in the organization in the 1960s, they often saw one another at board meetings and frequently worked on projects together. Before becoming a judge, Holzer occasionally referred clients to respondent and, on one occasion, asked respondent to help him with a case involving Holzer's mother. Holzer and respondent frequently encountered one another at various professional meetings, although neither socialized at the other's home. After Holzer became a judge in 1966, he and respondent saw one another less often.

From 1968 to 1978, Holzer was assigned to the law division of the circuit court of Cook County. Due to the nature of respondent's law practice, the majority of his firm's cases were filed in that division. In 1975, a block of approximately 60 cases from respondent's firm was assigned to Judge Holzer, and, over the next two years, Holzer conducted the pretrial conferences involving these cases.

In November 1976, Holzer was a candidate in the general election for a seat on the supreme court of Illinois but lost the race. In the months following his defeat, Holzer mentioned to respondent on several occasions that the campaign had been financially costly for him. In March 1977, over four months after the election, Holzer and respondent met. Again Holzer brought up the subject of the election and told respondent that he was in debt as a result of the campaign. Respondent then agreed to help Holzer by making a $2,500 loan to satisfy debts incurred during the course of the campaign.

Respondent then signed a check on the law firm's account in blank and told his secretary, Kathleen Cerulli, that Holzer would be contacting her regarding the loan and that the judge would tell her how to make out the check. On March 21, 1977, Holzer telephoned Cerulli and asked for a cashier's check made payable to the North Community State Bank. Cerulli spoke by telephone with respondent, who was working at home, and told him of Holzer's request for a cashier's check. Respondent instructed his secretary to do whatever the judge wanted. Cerulli then made the check that respondent had signed in blank payable to cash and with it purchased a cashier's check payable to the North Community State Bank. The teller who sold the cashier's check wrote the number of the cashier's check on the back of respondent's check. On the same day, March 21, 1977, the cashier's check was delivered to Holzer, who deposited it in his personal checking account. No promissory note was signed, no interest rate was discussed, and no repayment has been made. At the time of the transaction in question, 4 of the 60 cases previously assigned to Holzer for pretrial were still pending before the judge. Respondent did not personally appear before Holzer in any of these cases.

In 1978, Holzer was reassigned to the chancery division of the circuit court of Cook County. After that time, respondent's firm had only one case pending before Holzer. The case, Steinberg v. Chicago Medical School (Cook Co. Cir. Ct.), No. 74—CH—4045 (see also *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320), involved petitions for attorney fees filed by Aaron Gryka and Larry Drury following the resolution of a class action lawsuit that they had brought. Respondent's firm represented Gryka on a contingent fee basis in his claim for $270,000 in attorney fees. In September 1979, respondent, his associate, Steve Lane, and defense coun-

sel, Thomas Foran and Robert Wiss, met with Drury and Holzer in the judge's chambers to discuss both the total amount of fees to be awarded in the case and the division of fees between Gryka and Drury. Before the meeting began, Holzer announced that respondent had been personally, professionally and politically helpful to him throughout his career. Further, Holzer suggested that opposing counsel might want to consider asking Holzer to recuse himself in light of respondent's involvement in the case. No one objected to Holzer's participation in the proceeding; however, neither Holzer nor respondent disclosed the existence of the $2,500 loan. On September 25, 1977, Holzer awarded Gryka $50,000 in attorney fees; of that amount respondent's firm received $12,500. Holzer testified at his own trial that he crossed respondent's name off of his list of personal creditors around this time. There was no evidence, however, that respondent was aware of Holzer's action.

The Administrator filed a complaint against respondent alleging that respondent, by lending $2,500 to Judge Holzer in March 1977, had violated DR 7—110(A) (giving or lending a thing of value to a judge); DR 1—102(A)(2) (circumventing a disciplinary rule through the actions of another); DR 1—102(A)(5) (engaging in conduct that is prejudicial to the administration of justice) and Canon 9 (failing to avoid the appearance of professional impropriety). (Illinois Code of Professional Responsibility (rev. 1975) (hereinafter the Code).) Respondent answered by denying that he had made a personal loan to Holzer and asserting that the loan was intended and made as a campaign loan permitted by the Code.

In support of his allegations, the Administrator offered into evidence 73 checks drawn on respondent's business account during the years 1976 and 1977. All of these checks had been made payable to the campaign funds of various candidates for public office. Among the

checks were three made payable to "Holzer Campaign Fund" totaling $225. Further, the Administrator introduced into evidence respondent's check for $2,500 made payable to "Cash" and the cashier's check that had been purchased with it. Also admitted was a carbon copy of the check drawn on respondent's law firm account. The copy indicated that the $2,500 was to be charged to the firm's loans receivable account and contained the initials "RH" which Cerulli explained referred to Reginald Holzer.

The Administrator also offered into evidence, without objection, portions of Holzer's testimony from his own trial. Holzer testified that, in March 1977, he spoke with respondent although he could not remember where the conversation took place. At that time, Holzer told respondent that as a result of his recent campaign he was seriously in debt. According to Holzer, he then asked respondent whether he could "help out his campaign" with a $2,500 loan. Holzer further testified that, although he had crossed-off respondent's name from his list of creditors, the loan was still outstanding and that he personally owed respondent $2,500.

The Administrator called as a witness Kathleen Cerulli, who testified that she had worked for respondent for 23 years and was responsible for the office bookkeeping. Cerulli stated that respondent had little knowledge of or involvement in the office accounting procedures. Cerulli explained that, although respondent was not in the office frequently, when he was there he would often sign checks in blank to meet coming expenses. Regarding the loan in question here, Cerulli testified that respondent told her that he was making a $2,500 loan to Holzer and that Holzer would tell her how to make out the check. When respondent's counsel asked Cerulli on cross-examination whether her employer had

told her the loan was a campaign loan, Cerulli answered that respondent may have told her it was.

Respondent testified as an adverse witness and also in his own behalf. Regarding the block of cases assigned to Holzer for pretrial, respondent stated that he had had nothing to do with the block of cases being assigned to Holzer, that block assignments had been a routine practice in Cook County, and that his firm had had blocks of cases assigned to other judges in addition to Holzer. Respondent further testified that he appeared, at most, on three occasions in these cases when associates to whom the cases were assigned had been unable to attend.

Regarding the loan transaction involving Holzer, respondent testified that, in March 1977, Holzer mentioned to him that several of the judge's friends were each putting up $2,500 for the purpose of retiring his campaign debt and respondent told Holzer that he would be happy to be one of them. Respondent further stated that he signed the check in blank because he was uncertain about how the campaign fund was styled. Additionally, respondent stated that Holzer's request for a cashier's check made payable to a bank only indicated to him that the bank was where the fund was being created. Respondent testified that the loan has never been forgiven or written off and that he still hopes to collect from Holzer. Respondent stated that he did not disclose the loan to opposing counsel in the Steinberg case because campaign contributions are a matter of public record, and therefore do not require disclosure.

The Administrator sought to impeach respondent's testimony, claiming it was inconsistent with portions of a prepared statement read by respondent before the grand jury investigating Holzer and with respondent's answers to questions asked by the assistant United States Attorney at the same proceeding. The allegedly inconsistent statements are as follows:

"Judge Holzer did not tell me what he was going to do with the money, and I did not ask. From what he said, I imagined that he had some pressing debts somehow related to his former campaign.

\*\*\*

Back at my office I told Kathy [Cerulli] that I had told Judge Holzer I would loan him $2,500.

\*\*\*

Q. [Assistant U.S. Attorney]: And one other thing is, the money that you lent Judge Holzer was not lent to his campaign, is that right?

A. It was not a campaign—it was—

Q. By that, we've discussed this—

A. —and it's very hard. All I know here is a judge telling me about his problems, he's in debt, he needs money, he's approaching friends for loans, he hopes that he's going to pay it back, and it was arising out of this campaign that he spent a lot of money on. And now—Now, I didn't ever see this check until today, for the first time. I have never seen the check. I didn't know how it was made out, I didn't know the mechanics. In my own mind, I told Kathy that Judge Holzer was going to be in touch, and he would tell her how to make it out. And I wouldn't have been surprised when she showed me the check, that it was made out to a campaign fund. I just gave no thought to it.

Q. Right. It wasn't restricted in your mind; it could have been for the campaign, it might not have been for the campaign?

A. That's correct.

Q. You knew that for whatever reason, he was telling you—strike that—he was telling you, 'Because of the campaign, I have debts,' right, and you didn't understand whether that meant the campaign debt, a personal debt, you knew he needed money?

A. Yes.

Q. And you were providing this to him?

A. The picture I had is, there were people and companies that were trying to get money from him because he owed them money, maybe printing costs, or whatever,

this is kind of the picture. But you're correct when you say I didn't know, and I didn't."

At his hearing, respondent attempted to explain that portion of his grand jury testimony in which he agreed with the assistant United States Attorney's characterization of the transaction as "unrestricted." Respondent stated that his prior testimony had referred to the check that he had signed in blank and that it was the designation on the check that was unrestricted in his mind. The hearing panel found that the grand jury statements were not inconsistent with respondent's testimony at the hearing but then, over objection by respondent's counsel, admitted the entire transcript for whatever variances there might be.

Respondent then called, as witnesses, John Munday, a partner in respondent's law firm; Thomas Foran, respondent's counsel before the grand jury; and Corinne Lane, respondent's wife. Munday, Foran and Mrs. Lane all testified regarding respondent's description of the loan transaction to each of them. Munday stated that, after being contacted by the Federal Bureau of Investigation, respondent told Munday that the transaction was a loan for campaign purposes to Judge Holzer. Foran testified that respondent (who had waived his attorney-client privilege) described the loan as one to Holzer in connection with the campaign. Mrs. Lane testified that her husband told her that Holzer was in debt and that respondent had agreed to help him out with the $2,500 loan to retire his campaign debts. Also, respondent called as a witness Robert Loeb, a former assistant State's Attorney, who testified about the laws governing campaign contributions.

Finally, respondent offered the testimony of seven character witnesses who uniformly testified to respondent's outstanding reputation for professional integrity and honesty. Respondent also offered the evidence

depositions of six additional character witnesses who similarly attested to respondent's impeccable reputation.

Based on the evidence presented, the Hearing Board found that respondent made the loan to help defray the expenses of Holzer's unsuccessful campaign and that respondent's testimony was credible on this issue. In its findings of fact, the Board stated that respondent's position from the beginning had been that the loan was for campaign purposes and that no one, including Holzer, had contradicted respondent on this point. The Hearing Board then asserted that the only issue before it was whether the loan was for campaign purposes or some other purpose, stating that "[t]he manner in which the loan was made is of no moment, first because it was not wrong, and secondly because Holzer chose to have the money delivered that way." The Board then concluded that respondent's conduct was not prohibited by the Code and recommended that the complaint be dismissed.

The Review Board did not concur in the Hearing Board's report. The Review Board stated that DR 7–110(A), which prohibits attorneys from making gifts and loans to judges, should be read in conjunction with Supreme Court Rule 70 (65 Ill. 2d R. 70), which was in force at the time of respondent's alleged misconduct. Rule 70 provided that candidates for election to or retention in judicial office should not personally solicit campaign contributions but should establish some method which would not involve judicial candidates in the direct solicitation of funds. The Review Board concluded that Rule 70 suggested the permissible manner in which attorneys could contribute to judges' campaigns. Moreover, the Board reasoned that, because all of respondent's previous campaign contributions to judges had been made by checks payable to campaign committees, respondent knew precisely how campaign contributions were to be made. The Board concluded that respondent's departure

from his usual practice indicated that "the $2,500 loan was not that of a campaign nature but was intended as a personal loan" and thus violated DR 7—110(A). The Review Board also concluded that respondent's failure to disclose the loan to opposing counsel in the Steinberg case had been prejudicial to the administration of justice in violation of DR 1—102(A)(5) and had created an appearance of professional impropriety in violation of Canon 9. The Board then recommended a one-year suspension from the practice of law.

On review in this court, respondent contends that the Review Board's conclusion that he violated DR 7—110(A), as well as the other Code provisions, by making a personal loan to Holzer is not supported by clear and convincing evidence. Before addressing the argument, however, it is necessary to examine the scope of the rules governing attorney gifts and loans to judges as they existed in 1977, and to set forth what was and was not prohibited conduct.

At the time of the loan in question, DR 7—110(A) provided:

> "A lawyer shall not give or lend any thing of value to a judge, official, or employee of a tribunal."

While the rule prohibited attorneys from making gifts or loans to judges, it did not prohibit attorneys from contributing to judicial campaign funds. Although contributions to such funds were not explicitly sanctioned in the 1977 rule as they are today (see 107 Ill. 2d R. 7—110(a)), neither were they prohibited.

At the same time, Supreme Court Rule 61(c)(22) (58 Ill. 2d R. 61(c)(22)) prohibited judges from accepting gifts or favors from lawyers practicing before them. Rule 70, then in effect, provided that candidates for judicial office should establish some method for soliciting campaign contributions which would avoid the candi-

date's involvement in the direct solicitation of funds. (65 Ill. 2d R. 70.) Therefore, under the former rules, judges could not accept gifts or favors from attorneys but campaign committees established on behalf of judges running for retention or judicial office were not prohibited from doing so.

The rules existing in 1977 governing attorney campaign contributions did not differ materially from those in effect today. Current Rule 7—110(a) of the Code of Professional Responsibility, with limited exceptions not relevant here, still prohibits lawyers from making gifts or loans to judges. However, the rule now expressly permits contributions by attorneys to judicial campaign funds. Further, current Rule 65(C)(4)(c) of the Code of Judicial Conduct still prohibits judges from accepting gifts, favors and loans from attorneys practicing before them. (107 Ill. 2d R. 65(C)(4)(c).) While certain exceptions to this general prohibition now exist (see 107 Ill. 2d Rules 65(C)(4)(a), (C)(4)(b)), gifts or loans for campaign purposes are not among the exceptions. Instead, Rule 67(B)(2) directs judges to establish committees to secure and manage campaign funds. (107 Ill. 2d R. 67(B)(2).) Therefore, both the former and present rules have consistently prohibited attorney gifts and loans to judges while permitting attorney contributions to judicial campaign funds.

This distinction furthers the policy objectives behind the general prohibition against attorney gifts and loans to judges contained in DR 7—110(A) and its successor, Rule 7—110(a). In *In re Corboy* (1988), 124 Ill. 2d 29, 38, we stated that the rule "is designed not only to forestall lawyers from seeking to exercise improper influence over the judiciary, but also to eliminate even the appearance of improper influence." The rule's requirement that attorney contributions be made to judicial campaign funds rather than to the candidate personally seeks to

eliminate the appearance of improper influence by separating the candidate from campaign contributions. (See E. Thode, Reporter's Notes to Code of Judicial Conduct 99 (1973).) The testimony of one of respondent's character witnesses illustrates that the rule, by requiring attorney contributions be made to campaign funds, can achieve its intended purpose. When a judge, called by respondent to testify on respondent's behalf, was asked whether respondent had contributed to his campaign, the judge replied that he had no idea because such matters were handled by his committee.

Therefore, where, as here, an attorney is charged with violating DR 7—110(A) or its successor, Rule 7—110(a), and claims the gift or loan was a campaign contribution, the relevant inquiry in determining whether an ethical violation has occurred is whether the gift or loan was made to a campaign committee, or whether it was made to the judge in violation of the rules.

Because the Hearing Board perceived the question before it to be whether the loan was for campaign purposes, rather than whether it was made to a campaign fund, the Board's report contains no finding of fact concerning the recipient of the loan. Although the parties presented conflicting evidence on the question, we are convinced by the record that respondent made the loan to Holzer, albeit to relieve debts incurred in his campaign, and that the loan was not made to an existing campaign fund or to a separate fund in formation.

The accounting records from respondent's law firm indicate that the loan was made to Holzer. Both the carbon copy of the $2,500 check for cash, as well as the firm ledgers, indicated that Reginald Holzer was the party to whom the loan was made. Neither of these records contain any reference to a campaign fund. Respondent sought to explain these accounting references to Holzer as errors of which he had no knowledge. Re-

spondent offered evidence that he spent little time at the office during this period and had never been interested in or involved in the firm's accounting procedures.

Even if we were to accept respondent's explanation, however, the firm's records were not the only evidence presented that respondent made the loan to Holzer personally. Respondent's secretary, Kathleen Cerulli, his partner, John Munday, and his attorney, Thomas Foran, all testified that respondent had told them at different times that the loan was made to Holzer. Foran and Munday added that respondent said that the loan to Holzer was made in connection with the campaign. Moreover, respondent himself acknowledged that he looked to Holzer for repayment. Holzer's trial testimony and the testimony of respondent's wife describing the transaction is ambiguous.

The only evidence that the $2,500 loan was to Holzer's campaign fund was respondent's own testimony at the hearing. Respondent testified that he intended that the loan be made to a fund. Additionally, respondent stated that he believed the designation of the North Community State Bank as payee of the cashier's check signaled that the bank was either where the fund was located or where a fund was being created to retire the campaign debts.

Thus, the record contains conflicting evidence regarding the intended recipient of the $2,500 loan. The evidence that the loan was made to Holzer rather than to a campaign fund included not only respondent's own accounting records but also the testimony of respondent's witnesses. While respondent testified at his hearing that he intended to make the loan to a fund and not to Holzer personally, that testimony was inconsistent with prior statements made by respondent before the grand jury in which he described his understanding of the transaction. For a prior statement to be considered in-

consistent, it need not be directly contradictory to the witness' later testimony; it is sufficient that such statements have a reasonable tendency to discredit the witness' testimony. (See *People v. Henry* (1970), 47 Ill. 2d 312, 320-21; E. Cleary & M. Graham, Handbook of Illinois Evidence §613.2 (1979).) We believe respondent's statements made before the grand jury sufficiently cast doubt on respondent's later recollection that he intended to make the loan to Holzer's campaign fund to be considered inconsistent with his testimony at the disciplinary hearing.

Respondent claims that the grand jury testimony was improperly admitted *in toto* for impeachment purposes. Because a proper foundation for the evidence had not been laid by confronting the witness with each purported inconsistency and affording him an opportunity to explain it, we agree that it was error to admit the entire transcript. (See *People v. Henry* (1970), 47 Ill. 2d 312, 321.) However, respondent was given the opportunity to explain or deny those portions of the grand jury testimony set forth above, and, as a result, those statements were properly admitted.

Based on the record before us, we find that the evidence clearly and convincingly shows that respondent made the $2,500 loan to Holzer personally. We therefore reject respondent's argument that the evidence was insufficient to support a finding of misconduct and conclude respondent's actions resulted in a violation of DR 7—110(A).

Moreover, we do not consider respondent's violation of DR 7—110(A) to be merely technical. It is uncontested that the nature of respondent's practice caused his firm to have numerous cases pending not only in the circuit court of Cook County but before Judge Holzer himself. Respondent testified that for years following the loan, respondent had not forgiven the debt and that Holzer

had, from time to time, acknowledged the obligation. Similarly, Holzer in his testimony stated that he considered himself personally liable to respondent for the amount of the loan. This is precisely the type of obligation between judges and attorneys who practice before them that DR 7—110(A) seeks to prevent. Holzer's personal liability to respondent could have been avoided had the loan been made to a campaign fund rather than as a personal loan to the judge.

Because the principal charge of the Administrator's complaint was the violation of DR 7—110(A), we consider only briefly the merits of the other charges brought. Violations of DR 7—110(A) carry with them an appearance of impropriety. Because the administration of justice requires a tribunal that is impartial in appearance, as well as in fact, gifts or loans to judges are prejudicial to the administration of justice. Therefore, by making the loan in question, respondent also violated DR 1—102(A)(5).

We do not believe, however, that respondent's conduct constitutes the circumvention of a disciplinary rule through the actions of another in violation of DR 1—102(A)(2). The Administrator has neither alleged nor argued, and we fail to see, how the facts of this case support an allegation that the circumvention rule was violated by respondent's conduct. That charge is, therefore, dismissed. Finally, we have recently noted that Canon 9 does not afford a basis for discipline independent of proof of a violation of one of the disciplinary rules contained within the canon. (*In re Powell* (1988), 126 Ill. 2d 15; *In re D'Angelo* (1988), 126 Ill. 2d 45.) That charge is also dismissed.

Having concluded that respondent's conduct violated DR 7—110(A) and DR 1—102(A)(5), we must determine what discipline, if any, is warranted. In the cases consolidated in *In re Corboy* (1988), 124 Ill. 2d 29, we dis-

charged the respondents, who were found to have violated Rule 7—110(a) by making loans to a judge before whom they practiced. The common issue in those cases was the proper interpretation of the rule that the respondents were alleged to have violated. (*Corboy*, 124 Ill. 2d at 38.) While the Administrator argued for a literal, *per se* construction of Rule 7—110(a), the respondents argued that such an interpretation was unwarranted and that the application of the rule should depend on the subjective state of the attorney's mind. (*Corboy*, 124 Ill. 2d at 38.) The respondents urged that the rule be interpreted so as not to prohibit gifts or loans to judges if the gifts or loans were not motivated by an intent to influence the judge who received them. (*Corboy*, 124 Ill. 2d at 38.) Although the court ultimately rejected the respondents' proposed corrupt-intent requirement, the respondents would not have been in violation of the rule if the court had accepted their interpretation because none were found to have acted from improper motives. (*Corboy*, 124 Ill. 2d at 39, 49.) The court concluded that it would be unfair to apply a limitation that had just been defined and then to impose sanctions in those cases where not only the respondents believed that their conduct had not violated the rule but where there was also "considerable belief among members of the bar that they had acted properly." *Corboy*, 124 Ill. 2d at 45.

We do not believe that the considerations that led to the discharge of the respondents in *Corboy* are present in this case for several reasons. First, unlike the respondents in *Corboy*, we do not understand respondent in this case to argue for a construction of DR 7—110(A) different from that which we have placed upon it. Rather than contesting the rule and the construction placed upon it, respondent argued at his hearing and before this court that he complied with the rule by making a loan to a campaign fund and not to Holzer. Second,

there is nothing in the record to indicate there was any confusion among the legal community in Illinois concerning the manner in which attorneys were permitted to make contributions to judicial campaigns. The committee comments to Rule 7—110(a) indicate that prior to 1980 the prevalent practice in Illinois was for attorneys to make contributions to campaign funds and not to the candidates themselves. (107 Ill. 2d R. 7—110(a), Committee Commentary, at 648.) Finally, we do not believe that there was any misunderstanding on respondent's part when he made the loan concerning the proper method for attorneys to contribute to judicial campaigns. Of the 73 checks introduced at the hearing, those to judicial campaigns were made payable to the election or retention funds of the judges involved. None of the checks, all of which were from the years 1976 and 1977, was made payable to a judge personally. Unlike the Review Board, we do not believe that the evidence established that the loan was made to Holzer personally simply because the $2,500 check to cash varied from respondent's usual procedure for contributing to judicial campaigns. We do believe, however, that the numerous checks made payable to campaign funds is instructive on respondent's understanding of the disciplinary rules in 1977. For these reasons, we conclude that discharge is inappropriate and that some measure of discipline is warranted.

While this court strives for uniformity when imposing sanctions in attorney disciplinary proceedings (*In re Saladino* (1978), 71 Ill. 2d 263, 275; *In re Andros* (1976), 64 Ill. 2d 419, 425), we also recognize that each case presents a unique set of facts and must be decided on its own merits (*In re Mason* (1988), 122 Ill. 2d 163, 170). In determining the appropriate sanction, this court necessarily considers the aggravating and mitigating factors present in the case.

Although an attorney's mental state is irrelevant for the purposes of determining whether a violation of DR 7—110(A) has occurred (see *Corboy*, 124 Ill. 2d at 41), it is nonetheless an appropriate factor to consider when deciding the nature and severity of the discipline to be imposed (*In re Jones* (1988), 125 Ill. 2d 371, 379). In this case, the Hearing Board found, and the record supports the finding, that the loan was made for campaign purposes. Clearly this purpose was proper since attorneys were allowed to assist judges in their campaign efforts by contributing to judicial campaign committees.

Nor do we find any improper motive on respondent's part in making the loan to Holzer personally rather than to a campaign fund. Rather, we believe respondent's violation of the Code resulted from carelessness in complying with the requirements of the rules. Although respondent knew of the proper method of making campaign contributions, he was remiss in following the required procedures. As respondent stated before the grand jury, "[he] just gave no thought to it."

There are two factors that aggravate the violation here. First, because of the nature of respondent's practice, he knew that most of his firm's cases were pending in the circuit court of Cook County. Moreover, respondent had appeared in cases before Holzer prior to the loan. Even if respondent was unaware that his firm had four cases pending before Holzer at the time of the transaction, he should have realized that a possibility existed that his firm would have cases before Holzer in the future. Under these circumstances, we believe it was incumbent on respondent to be particularly careful in his dealings with Holzer.

Second, because respondent made a loan to Holzer rather than a loan or gift to his campaign fund, respondent created a debtor-creditor relationship between himself and the judge. While respondent may not have

known that his firm had cases pending before Holzer in March 1977, respondent knew of and was personally involved in the Steinberg case. Holzer's obligation to respondent as a result of the loan still existed at that time and both Holzer and respondent recognized the existence of the debt. Thus, respondent knew that a judge who personally owed him $2,500 was deciding one of his cases; yet, neither respondent nor the judge disclosed that fact to the other parties involved.

In mitigation, we note the testimony of respondent's 13 character witnesses, respondent's numerous contributions to the practice of law, and his long, otherwise untarnished, career. Therefore, on the facts of this case, we determine that a one-year suspension from the practice of law is the appropriate discipline.

*Respondent suspended.*

STAMOS and CALVO, JJ., took no part in the consideration or decision of this case.

CHIEF JUSTICE MORAN, dissenting:

I believe that the Administrator has failed to present clear and convincing evidence of any professional misconduct on respondent's part. Therefore, I respectfully dissent.

It is well established that, in disciplinary proceedings, an attorney is presumed innocent until proven guilty, and the burden of proof rests with those making the charges. (*In re Serritella* (1955), 5 Ill. 2d 392, 396-97.) Thus, the Administrator must prove allegations of misconduct by clear and convincing evidence. *In re Woldman* (1983), 98 Ill. 2d 248, 254.

The Administrator's case against respondent rests almost entirely upon the circumstances surrounding the loan, with the Administrator characterizing the manner of the payment as "suspicious." Yet, while the circum-

stances surrounding the transaction may arouse suspicion, it is well settled that suspicious circumstances, standing alone, are not sufficient to warrant discipline. *In re Amaden* (1942), 380 Ill. 545, 552.

The Administrator urges that the "suspicious" manner in which the loan was given indicates that the loan was not for campaign purposes. However, in its findings, the Hearing Board determined that from its inception, respondent's loan to Holzer was meant for campaign purposes and that no one had refuted respondent on this issue. The Hearing Board further determined that "[t]he manner in which the loan was made is of no moment." Based on these determinations, the Hearing Board unanimously concluded that the loan was intended as a campaign loan and recommended that the complaint be dismissed.

The Hearing Board's findings "are entitled to virtually the same weight as the findings of any initial trier of facts in our judicial system." *In re Bossov* (1975), 60 Ill. 2d 439, 441; see also *In re Hopper* (1981), 85 Ill. 2d 318, 323 ("the hearing panel's finding is entitled to great weight when the panel is acting as the trier of fact").

While this is an admittedly close case, as evidenced by the contrary rulings of the Hearing Board and the Review Board, I believe that we must defer to the findings of the Hearing Board.

While the transaction in question may be criticized for both the manner and method in which it occurred, I believe that, when all the facts and circumstances are considered, the proof is not of the convincing character essential to a finding that respondent should be sanctioned. Accordingly, I believe that the complaint should be dismissed and respondent should be discharged.